WILLIAM SCHLEY and others, plaintiffs in error, vs. ROBERT E. DIXON and others, defendants in error.

[1.] When the capital stock of an incorporated bank is subscribed and paid in, it constitutes a trust fund for the benefit of the stockholders, but when notes are issued and circulated thereon, another and superior trust arises and the stock must be first applied to the payment of the notes of the bank.

[2.] If the charter require a certain amount of the capital stock to be paid in before notes can be issued, but the directors nevertheless proceed to issue notes, if the bank fail or become insolvent, the bill holders and creditors of the bank may proceed at once against the stockholders and directors.

[3.] If stockholders do an illegal act or omit to do what the law requires, by which the rights of others are prejudiced, the law declares such conduct fraudulent.

[4.] One creditor may sue in equity in behalf of himself and others standing in the same relation to the subject of the suit.

[5.] When a party has to go into equity to enforce a judgment obtained by him at law, that judgment must be presumed to have been regularly obtained upon due proof of every allegation to entitle the plaintiff to recover.

[6.] The maxim "*actio personalis moritur cum persona*," does not apply to cases of which Courts of Equity have cognizance.

[7.] The assignees and successors of stockholders and directors of a bank, are not bound by the fraud of their assignors and predecessors, if they become assignees and successors without fraud.

[8.] Charges in a bill that a small sum was paid in money for bank stock, and the balance paid in notes for stock notes, and that the purchasers became President and directors and reported to the Governor that one-fourth of the capital stock was paid in, when the report was known to be untrue,

require an answer and explanation. The charges uncontradicted warrant the strongest conclusions against the parties.

[9.] Charges establishing a plain liability of parties sued must be answered.

[10.] An assignment by a bank of its effects to which the creditors are not parties or consenting, cannot deprive them of the right to sue stockholders and directors for breach of duty.

In Equity, from Muscogee County. Decided by Judge WORRILL, November Term, 1857.

The bill of exceptions in this case was filed to the decision of the Court below—sustaining a demurrer and dismissing the bill. The following are the facts of the case:

William Schley having obtained judgment in an action at law upon a bill of exchange against the Planters & Mechanics Bank of Columbus, filed his bill in equity on behalf of himself and other creditors of the bank, against Ann E. McDougald as administratrix of Daniel McDougald, James M. Chambers and Elvira Flewellen, Abner Flewellen, and William H. Chambers, as administratrix and administrators of Abner H. Flewellen, who had been directors in the bank, seeking to hold them individually liable for the amount of the notes. In this bill he alleged that under the statute incorporating the bank the capital stock was to consist of $1,000,000 and the stockholders were required to pay 25 per cent. on the amount of that capital stock, in specie, before the Board of Directors should be permitted to issue their bank notes. That in February, 1838, the bank commenced business and issued bank notes. That the bank did this without the payment of the 25 per cent. in specie, as required by the act of incorporation, and issued bills to the amount of $200,000, when only about $1000 had been paid in in specie, and the promissory notes of the stockholders were put into the bank in lieu of specie. That in October, 1839, James M. Chambers and Abner H. Flewellen, purchased stock in the bank and were elected directors, and continued as such till February, 1843. That Daniel Mc-

Dougald, since deceased, (to whom Ann E. McDougald had been appointed administratrix,) was active in putting the bank into operation, was a director and afterwards President of the bank, and continued so until April, 1841, and held stock to the amount of 2500 shares. That neither McDougald, Chambers, or Flewellen were original subscribers for the stock, but became owners by purchase and transfer. That for such stock they paid little or no money, but paid for the same by giving their notes to the bank in the stead of the notes of those from whom they purchased· That by an Act of the State of Georgia, the President and Directors of Banking Companies are required to report to the Governor semi-annually the condition of their banks— a list of stockholders and the amount paid in on each share of stock. That McDougald, Chambers, and Flewellen, did, in 1839, and as long as they acted as President and Directors, report to the Governor that 25 per cent. of the capital stock had been paid in, (a copy of one of the reports was annexed to the bill.) That these reports were regularly published in the newspapers. That relying on the statements made in these reports, complainant purchased of the bank a bill of exchange, and that the bill was not paid but returned to complainant, and when he presented it to the bank payment was refused. That he had, in an action on the said bill of exchange, recovered judgment against the bank and caused execution to issue thereon which was returned *nulla bona.* That the bank became insolvent in February, 1842. That the 25 per cent. on the capital stock had never been paid in, but that the notes of Daniel McDougald for stock, remained in the bank till June, 1841, when he sold and transferred to Benjamin W. Walker, a large portion of his stock, and substituted the notes of Walker in lieu of his own. That Walker was then insolvent and that his notes to the amount of $74,000 have never been paid. That the notes of Chambers and Flewellen remained in the bank till 1842, when they took them out and destroyed them; the notes of

Chambers amounting to $3000 and those of Flewellen to $2500. That at the time McDougald, Chambers, and Flewellen reported that 25 per cent. on thecapital stock had been paid in, they knew the same was not true, and that complainant was misled by those reports, and that he had no means of ascertaining the condition of the bank except through those reports. That complainants had no remedy at common law, and prayed that relief might be granted against the false representations of the defendants, and that they might be compelled to pay the amount of his demand.

To this bill the defendants demurred for want of equity; and upon the case coming on for hearing in November Term, 1857, the Court sustained the demurrer and dismissed the bill.

To this decision of the Court the plaintiff excepted.

DOUGHERTY, for plaintiff in error.

HOLT; and JONES, contra.

Judge BENNING having been of counsel in this case, did not preside.

*By the Court.*—McDONALD J., delivering the opinion.

There was a general demurrer filed to this bill, which was sustained in the Court below, and on the judgment of the Court on the demurrer, error is assigned. The counsel for the defendants in error in this Court, insist in support of the demurrer, on the following grounds:

1st. That a creditor's bill will not lie for fraud.

2d. It does not appear by the bill, that there was demand, notice and protest of the bill of exchange on which the judgment was obtained which the plaintiffs in error seeks

to enforce against the stockholders, and it was a foreign bill of exchange.

3d. The bill is not filed under the charter, but on the common law principle that the parties had been guilty of a fraud, and such being the case, it could not be brought against representatives of deceased parties.

4th. That directors who are successors of those who committed the fraud, are not bound.

5th. That the assignee of the bank should be sued and not the parties to the bill.

6th. The assignor should sue if there was a breach of trust or fraud.

7th. Complainants have an adequate common law remedy.

8th. That there are other parties who ought to be brought before the Court.

The material parts of the bill are set forth in the statement of the case.

[1.] The capital stock of an incorporated bank, when paid in, constitutes a trust fund in the hands of the President and Directors, to be managed, under the charter, for the benefit of the stockholders, and upon which bank notes may usually be issued for circulation. When the stock is subscribed and paid in, and notes are issued and circulated thereon, another and a superior trust arises in favor of the creditors of the bank, who must be paid before the stock can be withdrawn and distributed amongst the stockholders. If it be withdrawn, and the bank becomes insolvent, the bill holders may pursue it into the hands of the stockholders. *Wood vs. Dummer,* 3 *Mason's Rep.,* 308.

[2.] If the charter of a bank require a certain portion of the capital stock, in specie, to be paid in, before the directors are permitted to issue bank notes, and the stock is subscribed but the specie is not paid, and the directors, nevertheless, proceed to issue and put in circulation the bank notes, if the bank fail or become insolvent, the bill holders and creditors may proceed at once against the stockholders for

the subscribed stock not paid in, and against the directors for a breach of trust for issuing and putting in circulation notes on unpaid subscribed stock, contrary to their duty under the charter.

[3.] If the stockholders and directors do an illegal act, or omit to do what the law requires, by which the rights of others are prejudiced, the law declares such conduct fraudulent, and if the circumstances be such as to warrant the imputation of motives of probable gain to themselves, for such conduct, great strength is added to the charge. It is impossible to conceive a stronger case than that made by this bill against the original directors and stockholders. The capital stock of the bank is one million of dollars. One-fourth of this sum, *in specie*, was required to be paid in, before the directors were authorized to issue bank notes. They issued bank notes to the amount of two hundred thousand dollars, when the sum of one thousand dollars only, or some such small sum, had actually been paid in. The stockholders gave their promissory notes to represent the specie for the balance. Parties thus culpable are certainly liable for all the consequences to persons injured by their misconduct.

[4.] The community had a right to presume that there had been a *bona fide* organization of the bank, at the time notes were issued, and to rely on the assurance which such honest organization gave them of its ability to meet its engagements and contracts. Every person injured or losing by the flagrant abuse of the extraordinary privileges granted to the company, is certainly entitled to a remedy, and the injury being necessarily of the same nature, the remedy should be the same. In such case, one creditor may sue in behalf of himself and all others standing in the same relation to the subject of the suit. *Gray vs. Chaplin, 2 Sim. and Stu.* 267. Justice may be done in one suit, and where that is the case, a Court of Chancery will entertain jurisdiction of one case for all, rather than drive each person to

a separate suit to recover his rights, which would lead to innumerable suits and great delay. Suits of this sort are maintainable when the gravamen is the fraud of the defendant. *Small vs. Attwood, Younge,* 458; *Hitchens et al. vs. Congreve et al.;* 4 *Russell,* 562.

[5.] The complainant in this case, who sues for himself and others, who are willing to come in, has obtained a judgment against the bank on which he has not been able to collect his debt. Hence his resort to a Court of Equity to enforce it. The judgment must be presumed to have been regularly obtained, on due proof of every allegation necessary to entitle him to a verdict, and it will not be enquired into here.

[6.] It is true that the bill is not filed under the charter. It is filed on the principle that trustees guilty of a breach of trust shall be responsible to those aggrieved by it; and that if the trustees have, or are presumed to have made any advantage by it, then it is against conscience that they or their representatives should be allowed to retain this advantage. They should respond to injured parties. The maxim " *actio personalis moritur cum persona*," does not apply to cases of which Courts of Equity take cognizance. If a defendant commit a fraud, he shall be deemed a trustee for those whom his fraud has injured, and the suit may be revived on his death, against his personal representatives.

[7.] It is insisted, however, that as it appears on the face of the bill, that Daniel McDougald, Abner H. Flewellen, and James M. Chambers, were not original subscribers for stock, they are not liable for fraud committed by the original subscribers. It is true that directors and stockholders, who are guiltless of fraud themselves, and are successors or assignees, without fraud, of those who committed it, are not bound by the acts or conduct of their predecessors and assignors.

[8.] But this bill alleges that McDougald acted a conspicuous part in putting the bank in operation, in manner

aforesaid, and was a director, and subsequently elected its President; that each of the three persons aforesaid, McDougald, Flewellen and Chambers, became the owners of stock by purchase and transfer from other persons, that they paid no money therefor, except a small amount as a *premium* (in this relation not a very intelligible term,) for the stock so purchased, and perhaps a small sum in addition, being the amount which had been paid in by their respective vendors in the bills of other banks, but settled and paid for said stock by substituting or giving their notes in the said bank, in the place and stead of the notes of those of whom they purchased, and for the same amount and payable in the like manner. The bill proceeds to state that the said named persons, as President and Directors of the bank. reported to the Governor every six months while they were President and Directors, that twenty-five per centum of the capital stock of said bank had been actually paid in, which report was published. The bill charges that the reports were known to them to be untrue when made. These are grave charges, and enough, uncontradicted, to warrant the strongest conclusions against the parties. They may be susceptible of refutation, as they may have been defrauded by the persons from whom they purchased; but they certainly require answers and clear explanations. But the bill proceeds to state, that the notes given by the said McDougald for stock, remained in the bank unpaid, until the 14th day of June, 1841, when he sold and transferred to one Benjamin W. Walker, a large portion of his stock, to wit: thirteen hundred shares, and substituted the notes of the said Walker in lieu of his notes, for stock aforesaid, that said Walker is and was then insolvent, and that said notes remain unpaid to this day, and that they amount to the sum of seventy-five thousand dollars or some such large sum. These allegations require an answer and investigation. McDougald was President, and it is alleged that he substituted Walker's insolvent notes for his own. It is not alleged to have been

Schley et al. vs. Dixon et al.

an act of the bank or Board of Directors. The case as made by the bill is strongly against McDougald.

[9.] It is alleged that the notes of Chambers and Flewellen, given for stock, remained in the bank until the year 1842, when they, still acting as directors, took said notes from the said bank and appropriated them to their own use by destroying them, that the note of said Chambers amounted to three thousand dollars and that of Flewellen to twenty-five hundred dollars. These charges establish the plainest liability of these parties for the amount of their notes respectively, and manifestly demand an answer.

[10.] The assignment is not set out in the bill, and therefore the Court cannot determine that the complainant has a remedy against the assignee for the frauds alleged in the bill against the stockholders and directors, against whom an account is asked. If it was his duty, under the deed of assignment, to call for an account for such malfeasances on the part of the directors and stockholders, and he failed to do it, the complainant might have a remedy against them, but it does not follow that the stockholders and directors of a bank, by making an assignment to which the creditors are not parties, nor consenting, can deprive the creditors of remedies against them for a breach of duty, or any act or omission by which they have been injured.

We think that the remedy, for matters of the sort complained of in this bill, is in a Court of Equity, and that a Court of Law does not furnish so complete a remedy.

It does not appear from this bill, that for the acts complained of therein, there are other necessary parties who ought to be brought before the Court.

Judgment reversed.

N. B.—Mrs. McDougald having married, Robert E. Dixon was appointed administrator *de bonis non* of Daniel McDougald, deceased.