Brannin, &c., v. Loving, &c.; Louisville City National Bank v. Same.

CASE 61—BANKS—NOVEMBER 11, 1884.

# Brannin, &c., v. Loving, &c.

# ·Louisville City National Bank v. Same.

## APPEAL FROM LOUISVILLE CHANCERY COURT.

The charter of the "Exchange Bank and Tobacco Warehouse Company of Louisville," provides that. "the indebtedness of the corporation over and above that incurred for deposits of money shall at no time exceed their paid-up capital stock."

During the time that the bank was indebted beyond the amount of its paid-up capital stock, the president, Harvey, indorsed the name of the ban‹ upon three bills of exchange, and they were sold to appellants, and suits were instituted by appellants against appellees to hold them personally bound for the bills. Appellees, Loving and Bronner, who were directors, had no knowledge of the making or negotiation of the bills.

1. *Held*—The services of .directors are usually gratuitous. They are entitled to no compensation in the absence of a contract, and, unless they were guilty of gross negligence, they can not be held personally liable.

·2. But appellee, Harvey, who was the president of the bank. directed the bills to be drawn. As to him, it is not a question of neglect, but a violation of a known duty and a breach of trust, amounting to a *tort*.

3. As between one liable by contract and one responsible for a *tort* committed in connection with the contract, there is no right of contribution, as there is no privity between them.

HORACE C. BRANNIN FOR APPELLANTS.

1. The charter of the bank provides that, exclusive of amounts due depositors, the debts of the bank should not exceed the amount of its paid-up capital. The paid-up capital was $43 900.

2. Appellees either knew of the disregard of section 16 of the act, or they did not; and were grossly negligent about the management of the bank.

3. The case of Charitable Corporation v. Sutton, decided by Lord Chancellor Hardwicke is the leading case on the subject. (7 Beaman, 176; 9 Bush, 621.)

4. Appellees were agents of the corporation, and, as such, personally liable to those with whom they dealt for any excess or disregard of authority. (1 R. I., 46; 1 Lea (Tenn.), 403; 24 Ga., 273; Morse on Banking, page 77; 13 B. Mon., 404.)

P. B. MUIR FOR HARVEY AND BRONNER.

1. It is plain that in the absence of fraud or gross negligence from which fraud should be inferred, the appellees are not liable for the loss sustained by appellants.

2. The sixteenth section of the charter imposes no such penalty as insisted upon by appellant. The novation postponed the time of payment without the knowledge of appellees. It is in equity their release.

3. Appellants released the acceptors of the bills. Whether the entire debt could have been made out of the acceptors. we know not; and upon no conceivable ground can a recovery be had against appellees, Harvey and Bronner.

BARRETT & BROWN FOR W. V. LOVING.

In view of the abandonment of the several issues, in the court below, the only question left is whether Loving, as a director, caused the paper to be made and sold to appellants, or whether he approved or knew of the transaction.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

By an act of the Legislature, approved March 29, 1872, the "Exchange Bank and Tobacco Warehouse Company of Louisville" was incorporated and authorized to transact a general banking and warehouse business.

Section 16, of the charter, provides that "the indebtedness of this corporation, over and above that incurred for deposits of money, shall at no time exceed their paid-up capital stock."

On May 29, 1875, the "manager" of the warehouse department, by the direction of the appellee, Harvey, who was then the president of the company, drew a bill of exchange in its favor upon Spillman & Mitchell, of Scottsville, Ky., and which, for accommodation, was accepted by them, for $5,000, payable at the Merchants' National Bank, of Louisville, Ky., four months thereafter; and which was indorsed in blank to the appellants, Brannin & Co., for value and before maturity, in the name of the corporation by its said president.

On June 1, 1875, a like bill was drawn and accepted, save it was for $3,000; and it, before maturity and for value, was in like manner indorsed to the appellant, the Louisville City National Bank.

On June 4, 1875, a third similar bill was drawn and accepted, save it was for $4,000, and payable one hundred and thirty days thereafter; and it also, before maturity and for value, was similarly indorsed to the Bank of Shelbyville.

When these three bills, amounting to $12,000, were thus negotiated, the paid-up capital stock of the company amounted to but $58,900, estimating $15,000 of real estate as a part of it, while its indebtedness theretofore created amounted to a much larger sum, not counting what it was owing to depositors.

The bills held by Brannin & Co. and the Louisville City National Bank not having been paid at maturity, and both the Exchange Bank and Tobacco Warehouse Company and Spillman & Mitchell having become insolvent, these actions were brought against C. F. Harvey, W. V. Loving and L. Bronner, for the purpose of making them personally liable for them by reason of having been directors of said company when they were negotiated. At the time this was done the cashier, who made the sales, incorrectly represented that the bills were secured by property then in pledge to the company for their payment; and the plaintiffs seek to recover, first, upon the ground that the defendants were guilty of a positive fraud in connection with the sales; and, secondly, because the indebtedness was created in violation of the company's charter. The lower court held that the defendants were not liable. The first

ground upon which a recovery was sought is altogether unsustained by the testimony. In fact, the judgment of the court below recites that, upon the trial there, it was abandoned by the counsel for the appellants, and they do not now insist upon it; so that the second ground is alone to be considered.

The directors of a bank are, in a qualified sense, the bank itself. They occupy a more responsible position than that of mere agents or the officers of an ordinary corporation.

By reason of the trustee character of the bank, the great facilities its officers have for committing frauds, the inability of the public to know its condition, and the supreme control the directors have over its affairs, it becomes the duty of the latter to so conduct the business that any misconduct can not long continue. The banks transact the business of the country so largely, and those dealing with them are compelled to rely on their officers so implicitly, that the extraordinary privileges accorded to them should be properly exercised.

The services of directors are, however, usually gratuitous; they are entitled to no compensation in the absence of a contract for it, and are only required to exercise the same care that an ordinarily prudent man would in his own business of a like character.

The appellees, Loving and Bronner, had no knowledge whatever of the making or negotiation of the bills sold the appellants, and never approved the same.

The transactions were isolated; and the exercise of ordinary care upon their part did not afford them notice or enable them to stop them; and, being isolated,

it must not be presumed that they had notice of them simply because they were directors.

To hold them liable, we must require of them "unremitting vigilance in relation to the matters intrusted to their control;" and this is not the proper rule. (Railroad Co. v. Bridges, 7 B. M., 556.)

If they were guilty of negligence to any extent, it was not of such a gross character as to subject them to a personal liability.

The appellee, Harvey, however, stands in a different attitude.

While there is no evidence of *mala fides* upon his part, and while no motive of personal gain can be imputed to him, yet he was not only a director, but the chief officer of the company; and a higher degree of diligence is required of the president of a bank than of the other directors. He is expected to exercise a more constant and immediate supervision over its affairs than one who is merely a director.

In this instance Harvey directed the bills to be drawn; he directed them sent to Spillman & Mitchell for acceptance; and he indorsed them in the name of the company after the cashier had negotiated their sale.

As to him, it is not a question of neglect, but the violation of a known duty, and, therefore, a breach of trust, amounting to a tort; and nearly a century and a half ago, Lord Hardwicke said, in the celebrated case of the Charitable Corporation v. Sutton, &c., 2 Atk., 404, that a court of equity would lay hold of every breach of trust, let the person be guilty of it either in. a private or public capacity.

The community had a right to assume that the president of the company was familiar with its condition; it must be conclusively presumed that he was familiar with the provisions of the charter; and even if he acted in ignorance or innocently, he is not excusable, as in case of a mere error of judgment.

If he did know its condition and the provision in its charter and created the indebtedness, then he is certainly liable; and if he did not have such knowledge, then there was such a want of information as was absolutely necessary to the proper performance of his duty, and he is responsible for assuming to act without it.

He assumed to act under a charter containing a provision so plain that it could not excusably be broken by him, and when it was his duty to know the condition of his company; and under such circumstances he is equally as responsible as if he had been guilty of fraud. Although acting *bona fide*, he had no right to create the debt; it was not merely an omission, but a positive violation of his duty, by which an innocent outside party is made to suffer, and one who had placed confidence in the implied assertion of authority arising from the making of the paper.

In such a case it is not only just, but mercantile interests require that the agent should be held personally liable, instead of permitting the loss to fall upon an innocent party, who has been thus misled. If one of two innocent parties must suffer, it must be the one who has caused the loss and induced the other to place a false confidence in his acts.

In the case of Schley, &c., v. Dixon, &c., 24 Ga.,

376 KENTUCKY REPORTS. [VOL. LXXXII.

Brannin, &c., v. Loving, &c.; Louisville City National Bank v. Same.

273, it was held that as the charter of the Planters' and Mechanics' Bank of Columbus required a certain amount of the capital stock to be paid in before it could issue notes, and as the directors had issued them before it was done, that they were therefore personally liable to the creditors of the bank, it having become insolvent; and it is a general rule that if a special deposit is converted or a fund misemployed by the agency or consent of the president or directors of a bank, they are responsible. It is an abuse of extraordinary privileges for which there should be a remedy; and in this instance an agent of a high grade having wrongfully held himself out as having authority to do an act, can not now shelter himself under the assertion that he believed he had the power or that he acted innocently.

If the directors of a bank declare a dividend when the bank is so much embarrassed that it is done either through fraud or folly, and which would not have been advocated by any one save from dishonesty or incapacity, they are personally liable. (Morse on Banks and Banking, page 77.)

In this instance, the provision in the charter was a wise one; it was intended to protect the public, who could not know the condition of the assets of the bank, but who, being asked to deal with it, had a right, by virtue of its charter, to rely upon sufficient capital being kept on hand to balance the indebtedness; and the appellees, Loving and Bronner, are not held liable because they had no part in the creation of the debt in question, and were not, in our opinion, guilty of willful carelessness or gross negligence as to it.

It is urged, however, that inasmuch as the appellants,

by an agreement with Spillman & Mitchell, extended the time of payment of the bills, that thereby the appellees were released from any liability that may have existed; and that this is certainly so as to the appellants, Bronner & Co., because they accepted a certain sum from Spillman & Mitchell, and released them from further liability.

The latter were bound by contract, while the appellee, Harvey, is sued and liable for a tort; and we have been able to find no direct authority upon the question whether a novation of the contract or a release of the one in such a case releases the other.

A release by the creditor of one joint obligor releases another, because it is an admission that the debt is paid, and it is an interference with the rights of the obligors as between themselves.

A release of one joint trespasser releases the others, because each is considered as sanctioning the acts of all the others, thereby making them his own, and thus rendering himself liable for the entire damage, as occasioned by himself. He is considered as committing the entire injury, and a satisfaction, therefore, as to him is considered as in full of the claim.

As between one liable by contract and one responsible for a tort committed in connection with the contract, however, there is no right of contribution, as there is no privity between them; and, therefore, no one is affected by a release in such a case save the parties to it; and the reason for its operating as a release to any one save the party to it fails.

In this instance, however, Spillman & Mitchell were merely accommodation acceptors; and hence the bank

378    KENTUCKY REPORTS. [VOL. LXXXII.

Brannin, &c., v. Loving,'&c.; Louisville City National Bank v. Same.

could not, in any event, have had any claim against them.

Moreover, all the parties to the bills consented to the extension of the time of payment, and the bank waived any objection to the release of Spillman & Mitchell by Bronner & Co., which must be considered as a consent to it.

The release was expressly confined in its operation to Spillman & Mitchell, and expressly reserved the rights of the appellants as to all other parties; and it was plainly not a satisfaction of the claims.

The owners of the bills seem to have acted prudently as to the extension and release, and in the manner calculated to best prevent loss to the appellees.

The injury to the appellants has resulted from Harvey's act and not from their neglect or any indulgence or release given by them. (13 B. M., 403, Hord v. Chandler.)

One may sue instantly in damages for a fraud or a tort committed in the sale of a note. In such a case, to entitle him to recover, he must prove the sale, the fraud or tort, and ordinarily the insolvency of the obligor. (2 J. J. M., 296, Cope v. Arberry.)

In this case there is no sufficient denial of the insolvency of Spillman & Mitchell and the company at the maturity of the paper.

Wherefore the judgment is affirmed as to the appellees, Bronner and Loving, but reversed as to the appellee, Harvey, for further proceedings in conformity to this opinion.

Judge Lewis not sitting.