Case 97.—ACTION BY WESTERN BANK OF LOUISVILLE AGAINST COLDEWEY'S EX'TX AND OTHERS FOR NEGLIGENCE OF INTESTATE, ANTON F. COLDEWEY, IN DISCHARGE OF OFFICIAL DUTIES AS PRESIDENT OF THE BANK.—December 15, 1904.

## Western Bank of Louisville v. Coldewey's Ex'tx, &c.

Appeal from Jefferson Circuit Court, Chancery Branch (1st Divison).

SHACKELFORD MILLER, Judge.

Judgment for defendants. Plaintiff appeals. Reversed.

Banks and Banking—Loans to Insolvents—Liability of Officials—
Right to Sue One or All Derelicts—Estoppel.

1. Banks and Banking—Loans to Insolvents—Liability of Officials

Western Bank of Louisville v. Coldewey's Ex'tx, &c.

—Where a bank president allows the funds of the bank to be appropriated by a customer or customers, who are known to be insolvent or whose assets or business would not justify a prudent person similarly situated to extend them such credit, he will be liable to the bank as for a neglect of duty where loss results from it.

2. Same—Where power is not delegated by the board of directors of a bank, or by the advisory committee thereof, to the president and cashier to loan the bank's funds otherwise than upon the advice and consent of said board or committee, such loan so made is a direct breach of the plain duty owing by these officials to the bank and its stockholders and creditors, and said officials should be, and are, liable to the bank for the damages.

3. Right to Sue One or all Derelicts—That the bank has not seen proper to proceed against the cashier by action does not lessen the liability of the president for his breach of duty, and the further fact that some of the board of directors were culpably negligent in the matter will not excuse the president as the bank's right of action is for the tort against all its derelict officers, and it may sue one or more.

4. Estoppel—In the matter of estoppel pleaded by appellees, Held—That before a matter can operate as an estoppel in pais it must be shown that the party pleading it has been prejudiced in some right of his by the act complained of; that he would have done something which he could have done but for the act, or that he was induced to do something that he would not have done but for it.

O. A. WEHLE and HENRY L. STONE for appellants.

## QUESTIONS AND AUTHORITIES.

1. An officer of a bank, which has an active board and discount committee, who permits overdrafts to be made without the consent of the board of directors, commits a breach of trust, and is personally liable if the bank suffers a loss by it. (Morse, secs. 357, 358.) Otherwise, where the bank has no active board and the whole management is left to the president and cashier. (Pryse v. Farmers Bank, 17 Ky. Law Rep., 1056, 33 S. W., 532; First National Bank v. Reese, 25 Ky. Law Rep., 778, 76 S. W., 384.)

2. The custom or practice of a bank of allowing its officers to exercise discretion in permitting overdrafts is against public policy, and is no defense to a suit against such officer to recover a loss caused through an overdraft permitted without

the knowledge of the board. (Minor v. Bank of Alexandria, 1 Peter, 1; Breese v. U. S., 106 Fed. Rep., 680 [C. C. App.]; Market Street Bank v. Stumpe, 2 Mo. App., 545; Lancaster Bank v. Woodward, 18 Pa. St., 357.)

3. Not even where the president and some of the directors occasionally overdraw. (Market Street Bank v. Stumpe, 2 Mo. App., 545.)

4. The president of a bank is its chief executive officer (Savings Bank v. Benton, 2 Metcalf, 240); he is the superior of the cashier (Pryse v. Farmers Bank, 17 Ky. Law Rep., 1056; Commercial Bank v. Ten Eyk, 48 N. Y., 305); he is the principal trustee of the funds of the bank (Brown v. Farmers and Merchants National Bank, 88 Tex., 265.)

5. If the president directs the cashier and other employes to honor the overdrafts of a particular customer without the consent of the board of directors, he is guilty of a breach of trust, and liable for the loss caused by it, and though the cashier may be his accessory in the breach of trust, this does not excuse the president. (Oakland Bank v. Wilcox, 60 Cal., 126; Brown v. Farmers and Merchants National Bank, 88 Tex., 265; First National Bank v. Reid, 36 Mich., 263 [Cooley]).

6. If the president establishes, by his directions, a practice to permit overdrafts to a certain customer, and then absents himself for a time without giving contrary directions, he is liable for the loss suffered from overdrafts of the same customer permitted in his absence. (Oakland Bank v. Wilcox, 60 Cal., 126.)

7. Concealment of facts on the part of a fiduciary from his cestui que trust constitutes actual fraud. (Pomeroy Eq., secs. 901, 902.)

8. It is not the duty of unsalaried directors to suspect fraud on the part of the officers, to examine the individual ledger and other books, and to see whether the reports of the officers are truthful and correct. (Dunn v. Kyle, 14 Bush, 134; Savings Bank v. Caperton, 87 Ky., 319.) They are not liable to the bank for signing reports fradulently prepared by the officers, which they, the directors, believed to be true. (Trimble v. Reid, 97 Ky., 716; Utley v. Hill, 155 Mo., 232.) And their failure to investigate the books of account, which might have disclosed overdrafts, does not exonerate the president.

9. The suit by a bank against the party to whom an officer has improperly loaned its funds, and the suit by the bank against the officer to recover the damage done thereby, are not inconsistent remedies, and the latter may be pursued after the former. (Bank of St. Mary's v. Calder, 3 Strobt. Law, 403; Cassell v. Mercer National Bank, 22 Ky. Law Rep., 1009; Goodyear Vulcanite Co. v. Caduc, 144 Mass., 85.)

Western Bank of Louisville v. Coldewey's Ex'tx, &c.

10. A compromise of the claim of the corporation with the party to whom its money was improperly loaned by its officer, if made in good faith, does not estop it from bringing suit against its officer for the loss sustained by his breach of trust. (Goodyear Vulcanite Co. v. Caduc, 144 Mass., 85.)

11. Facts amounting to an estoppel must be pleaded and clearly and satisfactorily proved. (Ball v. Briggs, 19 Ky. Law Rep., 829.)

12. A party may be estopped as to one devisee so as not to be able to recover the proportionate part of a debt which would fall upon that devisee's share, without being estopped from re-covering the rest of the debt which would fall upon the shares of the other devisees. (Southworth v. Sebree, 19 Ky. Law Rep., 704.)

13. In order to constitute an equitable estoppel by conduct it is necessary:

(a.) That the attorney whose conduct is relied upon has authority to waive his client's rights. (Norris v. Williams, 23 Ky. Law Rep., 1497.)

(b.) That knowledge on the part of such person of the true state of facts and of his rights be clearly alleged in the pleadings and proved. (Wait v. Gover, 11 Ky. Law Rep., 750; Ford v. Mayo, 91 Ky., 88; Bank of Commerce v. Payne & Viley, 86 Ky., 446; Banks v. Collins, 20 Ky. Law Rep., 46; Henshaw v. Bissell, 18 Wall., 255; Smith v. Sprague, 77 N. W., 689 [Mich.].)

(c.) That the persons pleading the estoppel have been injured by acting on the false statement. (Louisville Banking Co. v. Asher, Ass'ee, 23 Ky. Law Rep., 1661; Thomas v. Sweet, Ib., 1599; Price v. Keeney, 5 Ky. Law Rep., 706; Massie v. Hiatt, 82 Ky., 314.)

PIRTLE, TRABUE, DOOLAN & COX and CHAS. H. SHIELD for appellees.

### POINTS AND AUTHORITIES.

1. This is an action in tort for alleged negligence or wrongful act, and no recovery can be had unless the appellant, in addition to proving its charges of negligence or wrongful act, also proves damage to it as the direct and proximate result of such alleged negligence or wrongful act. In order to do this appellent must establish three propositions:

(a.) That under the facts of this case some duty rested upon Anton F. Coldewey to discover and to prevent the overdrafts allowed in the Western Bank by the cashier with the knowledge and sanction of the board of directors.

(b.) That this alleged duty was violated or neglected by Anton F. Coldewey.

(c.) That overdrafts were allowed during the administration of Anton F. Coldewey as president of the Western Bank, in violation of some duty owing from him to the bank, and that such overdrafts have never been paid. Of course there is no damage unless they remain unpaid.

2. The appellees defend this action on the following grounds, viz.:

(a.) They deny in toto the charges of fraud or wrongful act against Anton F. Coldewey.

(b.) They deny in toto the charges of negligence against Anton F. Coldewey.

(c.) They deny that any loss or damage accrued to the appellant, either directly or indirectly, from any fraud, negligence, or wrongful act alleged against Anton F. Coldewey.

(d.) They show by this record that the overdrafts charged to have been authorized by Anton F. Coldewey were in fact authorized by Frese, the cashier, with the knowledge and sanction of his board of directors, who ratified the cashier's acts in allowing such overdrafts.

(e.) They show by this record that so far from any loss having accrued to the Western Bank from overdrafts allowed in the lifetime of Anton F. Coldewey in the two accounts complained of, all of such overdrafts have been paid in full since his death, and that the only overdrafts in such accounts remaining unpaid are those which were allowed by the cashier, Frese, long after the death of Anton F. Coldewey.

(f.) They showed by this record that after the death of Anton F. Coldewey the Western Bank, through its board of directors, with full knowledge of the facts, ratified the acts of its cashier and other officers in allowing overdrafts in the two accounts in question, and, moreover, entered into a contract with W. G. Coldewey whereby its claim against him on account of these overdrafts was expressly satisfied, and he was released from further liability thereon. The effect of this contract was to discharge the estate of Anton F. Coldewey from any liability with which it might, by any possibility, have been theretofore chargeable on account of such overdrafts. Furthermore, as a condition of making this contract, the Western Bank expressly waived any claim which it might theretofore have asserted against the estate of Anton F. Coldewey on account of such overdrafts.

3. The nature of the attack made in this action upon Anton F. Coldewey is such as to show an utter want of equity in the appellant's case. It is a cowardly attempt by the living directors of the Western Bank to impose upon the estate of Anton F. Coldewey for their own benefit a liability for acts done or omitted to be done by themselves.

Western Bank of Louisville v. Coldewey's Ex'tx, &c.

4. The record in this case not only fails to make out any case of fraud or negligence or wrongful act on the part of Anton F. Coldewey whereby any loss resulted to the Western Bank, but it shows that the cashier and the board of directors of the Western Bank permitted the overdrafts out of which the losses claimed in this case resulted, feeling, when they did so, that the extension of such credit to W. G. Coldewey was perfectly safe and for the best interests of the Western Bank.

5. The Western Bank did not have an active discount committee or advisory board. On the contrary the cashier, under the usage of the bank, had plenary power to act for the bank in the matter of loans and discounts and overdrafts, and he exercised this power time and again through a long course of years, with the sanction of the board of directors. There is absolutely nothing in this record to distinguish this case from two Kentucky cases relied on by us, viz.: Pryse v. Farmers Bank, 17 Ky. Law Rep., 1057; First National Bank v. Reese, 25 Ky. Law Rep., 778. Moreover, such a committee or advisory board would, under the by-laws and usage of the Western Bank, have had nothing whatever to do with the allowance of overdrafts, being concerned only with loans upon or discounts of commercial paper.

6. The cashier, and not the president, of the Western Bank was its chief financial and executive officer. This is not only true under the law, but especially true under the usage which prevailed in the Western Bank. (Zane on Banks and Banking, secs. 98, 100, 105; Morse on Banks and Banking, secs. 143, &c., 156, &c.; Dunn v. Kyle, 14 Bush, 134; Batchelor v. Planters Bank, 78 Ky., 435; Jones v. Johnson, 86 Ky., 543; Savings Bank v. Caperton, 87 Ky., 313; Wheat v. Bank of Louisville, 9 Ky. Law Rep., 739; Reno v. James, 16 Ky. Law Rep., 60; Pryse v. Farmers Bank, 17 Ky. Law Rep., 1057; Bobb v. Savings Bank, 23 Ky. Law Rep., 821; First National Bank v. Reese, 25 Ky. Law Rep., 778; Briggs v. Spaulding, 141 U. S., 132; Clews v. Bardon, 36 Fed. R., 620.)

7. The board of directors of the Western Bank had not only in law, but in fact, actual knowledge or notice of the overdrafts in the two accounts in question, and with such notice or knowledge expressly sanctioned the overdrafts and permitted them to continue. A notice to one director is a notice to the entire board of directors. (Morse on Banks and Banking, secs. 112, 133, 134, 296; Grant County Deposit Bank v. Poynts, 22 Ky. Law Rep., 108.)

8. The testimony relied on by the appellant in this case is entitled to very little credit in any court. (Bobb v. Savings Bank, 23 Ky. Law Rep., 824.)

9. The overdrafts which accrued during the lifetime of Anton

F. Coldewey have all been paid by discounts and deposits credited to the same accounts since his death. It is not even necessary for this court to make the application of such credits, as the parties themselves have made this application, and by so doing have extinguished all overdrafts that may have existed prior to Anton F. Coldewey's death. (Grant County Deposit Bank v. Poynts, 22 Ky. Law Rep., 105; Clayton's Case, Devaynes v. Noble, 1 Merivale, 608; 3 English Ruling Cases, 351-355, and notes; Zane on Banks and Banking, sec. 160; Morse on Banks and Banking, sec. 355.)

10. If Anton F. Coldewey could be regarded as being in any sense a surety or guarantor for the overdrafts in question, then as such surety or guarantor he was discharged from liability by the action of the bank in settling its claim against W. G. Coldewey.

11. There is an undoubted power in the management of a bank to allow overdrafts to its customers in the exercise of an honest discretion. This power may be conferred by the board of directors upon the cashier, and when so conferred, if exercised by him honestly, with due regard to the interests of the bank, no liability attaches to any one simply because subsequent developments may show a loss resulting from the allowances of such overdrafts. (Morse on Banks and Banking, secs. 358, 171, 165; Zane on Banks and Banking, sec. 160; Pryse v. Farmers Bank, 17 Ky. Law Rep., 1057; First National Bank of Pineville v. Reese, 25 Ky. Law Rep., 778.)

12. The board of directors of the Western Bank not only by the usage of that bank gave to the cashier authority to allow these overdrafts, but they subsequently ratified the allowance with full knowledge of the facts, taking and retaining notes of the customer in settlement of the overdrafts, and, furthermore, entered into a contract with him by which they accepted in satisfaction of all their claims against him an interest in a trust estate created for their benefit under a deed of trust made by him at their instance. The ratification by this means of the overdrafts is equivalent to a previous grant of authority to make the overdrafts, if authority in the cashier for that purpose were wanting. (First National Bank of Pineville v. Reese, 25 Ky. Law Rep., 778; Pryse v. Farmers Bank, 17 Ky. Law Rep., 1057; Jones v. Johnson, 86 Ky., 530.)

OPINION BY JUDGE O'REAR—Reversing.

This is an action by the Western Bank of Louisville, Ky., against the estate of its late president, Anton F. Coldewey, to recover damages for about

$35,000, sustained through the conduct of the president by personally permitting his son William G. Coldewey to overdraw his account with the bank without the knowledge and consent of the board of directors, an advisory committee of which board was daily on hand to pass on loans applied for, and in concealing such overdrafts from the board and its members. It is charged that the conduct of Anton F. Coldewey complained of was the result of negligence on his part, wherein he neglected to discharge his duties to the bank, from which the damage stated has resulted; and it is also charged that his conduct was fraudulent as to the bank. The facts necessary to an understanding of this case are these:

It appears that Anton F. Coldewey had been the president of the bank since its organization, some 40 years ago, until his death, in April, 1900. The capital stock of the bank was, for many years before the death of Anton F. Coldewey, $250,000, and the surplus something over $50,000. The bank had a board of directors who met monthly as a body to consider the affairs of the institution. The board was an active one in the management of the business affairs of the bank, so far as they were brought to its attention. The by-laws provided for an advisory committee, and the custom prevailed from the beginning to the death of President Coldewey to have an advisory committee from this board, the president being ex officio one of its members. The other two were taken in rotation, serving for one week out of each month; there being eight other directors beside the president. This advisory committee was required to meet, and did meet, when the bank was open for business and when there was business necessitating it, every morning at 11 o'clock in the banking house of appellant. Their duties included their examining

and passing upon all applications made to the bank
for loans and for discount of notes and other paper
to the bank.   They kept what were called "applica-
tion books," on which they supposed, and on which
it was presumed, that every note offered to the bank
for discount, and in which all applications to borrow
its money, were entered for the inspection and ap-
proval of the advisory committee. In 1898 William G.
Coldewey, who was a son of the president, Anton F.
Coldewey, and who was engaged in the wholesale
liquor traffic at Louisville, bought out an establish-
ment of that nature which had been conducted by
his uncle, August Coldewey, lately deceased.   It was
bought on credit entirely, for the consideration of
about $10,000.   He continued the business bought
from his uncle under the name of August Coldewey
& Co.   Upon buying this business he opened an ac-
count with appellant bank by borrowing from it $2,-
000, evidenced by his personal note for that amount,
without collateral or other security.   The proceeds
of the note were placed to his credit, against which
he checked.   This note was not put on the application
book, nor was it laid before the advisory committee
or board of directors.   With this start William G.
Coldewey personally, and in the name of his firm
August Coldewey & Co., has drawn checks at his own
discretion against appellant bank, without any pre-
vious arrangement with the bank or its directors that
he might do so, and although he had no funds there
against which to draw the checks.   The proof is con-
clusive that, when these checks were presented to
the bank to the individual bookkeepers through the
clearing house, these bookkeepers carried them to the
president, Anton F. Coldewey, who kept an office in
the bank, and was there almost daily in the manage-
ment of its affairs, and asked him whether the bank

should pay the checks, notifying him at the same time that the accounts were overdrawn at times as high as $10,000 or more. The invariable response was a direction to the clerks to pay the checks, which was done. On some occasions, when the president was absent, the clerk would report the checks to the cashier, who directed them to be paid. By this proceeding something like $35,000 was drawn out of the bank in excess of what was put in by way of deposit and notes discounted by William G. Coldewey, in his own name and the name of the business concern he was conducting under the style of August Coldewey & Co. That this fact was known to the president and consented to by him, and in fact directed by him, the record leaves little or no room for doubt. During all this time William G. Coldewey was indebted and involved apparently as much or more than he owned, and after the first few months from the beginning of this business was insolvent. Shortly after his father's death he made a deed of assignment for the benefit of all his creditors. His estate, including that inherited from his father, would not pay much upon his indebtedness.

Anton F. Coldewey received a salary of $2,000 per year from the bank as its president. He was the active head of the institution, participating personally in the daily management of its business affairs. It was he who laid before the advisory committee the paper that was to be passed upon by them. Notwithstanding the facts above enumerated, he did not tell them at any time that his son was being permitted to overdraw his account so extensively, or at all; nor did he bring to the attention of the committee a number of notes given by his son to the bank without security, which were credited upon his over-

drawn account, reducing it apparently to that extent. The directors testified that they did not know and had never heard of William G. Coldewey having overdrawn his account to the extent that he did do it, nor had they heard that he had overdrawn it at all until after the death of Anton F. Coldewey.

That certain of the directors, including the president, overdrew their accounts at times, and that other persons were allowed to overdraw their accounts at times, is not material here. The practice in a bank of allowing its customers to overdraw their accounts without prearranged security is a matter at least to be determined by the governing body of the bank, its board of directors, or if the board sees proper to delegate that matter, and does delegate it to its president or cashier, then by those officers. (Pryse v. Farmers Bank, 17 Ky. Law Rep., 1056, 33 S. W., 532; First National Bank v. Reese, 25 Ky. Law Rep., 778, 76 S. W., 384.) But if the practice as a business course is allowed by the bank at all, whether by direct action of its board of directors, or whether by its cashier or president under the authority delegated to them by the board of directors, the propriety of allowing particular overdrafts is one that addresses itself to the business judgment and discretion of the officers having that matter in charge. If they act prudently and honestly, they will not be held responsible for losses that occur from it. On the other hand, if they allow the funds of the bank to be so appropriated by a customer or customers who are known to be insolvent, or whose assets or business would not justify a prudent person similarly situated to extend them such credit, they will be liable to the bank as for a neglect of their duty, where loss results from it.

We might stop this case here on the facts; for, even

if this overdrawing of accounts by a customer of appellant bank was a practice expressly allowed by authority of its board of directors, and was left by them as a matter of business discretion to the president and cashier, in this case the facts show that the line of credit extended to William G. Coldewey was far beyond what his business and property justified. It was a reckless employment of the bank's funds, more than negligent, for which both the president and cashier would be liable to the bank as for a neglect of their duties and a breach of their trust. To go further, as the case has been prepared and presented on this line, we find that the power was not delegated by the board of directors, or by the advisory committee, to the president and cashier to loan this bank's funds otherwise than upon the advice and consent of the advisory committee, or of the board of directors. The loans that were made, for such is the effect of the overdrafts of William G. Coldewey, were not by the consent of, nor were they known to, the directors, nor to the advisory committee. It appears, rather, that they were concealed from them. This was a direct breach of a plain duty owing by these officials, the president and cashier, to the bank and its stockholders and creditors, for which they should be and are liable to the bank, damage to it having resulted therefrom. That the bank has not seen proper to proceed against the cashier by action does not at all lessen the liability of the president for his breach of duty. We find, however, that several thousand dollars of these overdrafts occurred after March 13, 1900, the last time Anton F. Coldewey appears to have been at the bank, acting as its president. After that he was confined to his home by sickness, from which he died. For the overdrafts created after March 13, 1900, he is not liable, for he did not author-

ize them; nor, so far as the record shows, did he know that they were being created, nor was it within his power at that time to have prevented it. For allowing these it appears that the cashier alone is responsible.

A matter is pleaded in defense by way of estoppel against the bank, which is, that on September 12, 1900, William G. Coldewey made a deed of trust to Gustave D. Coldewey of all the assets of August Coldewey & Co. and of his individual assets, including his share in his father's estate, in trust for the payment of his business creditors, and that the bank, together with other business creditors of August Coldewey & Co., then agreed, in consideration of that conveyance, not to sue William G. Coldewey, but to look only to the assets so conveyed to the satisfaction of its claims against William G. Coldewey, and that by this conduct the bank had estopped itself from making any claim against Anton F. Coldewey for losses by his breach of trust as president. Before a matter can operate as an estoppel in pais, it must be shown that the party pleading it has been prejudiced in some right of his by the act complained of; that he would have done something which he could have done, but for the act; or that he was induced to do something that he would not have done, but for it. It is not shown in this case that Anton F. Coldewey's estate was injured in any way by the matter pleaded as an estoppel. Suppose William G. Coldewey, being insolvent, had determined or threatened to avail himself of the Bankrupty Act, and was induced to forego that in the bank's favor by the agreement of the bank not to sue him upon these debts for a definite time, as it is charged. How could that have injured Anton F. Coldewey's estate? In the first place, making the deed of assignment did not prevent Wil-

liam G. Coldewey from taking the benefit of the bank-
ruptcy statute.    In the next place, the deed of assign-
ment did not give to William G. Coldewey anything
of his own estate that he was not entitled to under
the law, without regard to that deed, except the im-
munity from suit for a certain time.'    As Anton F.
Coldewey was not the surety of William G. Coldewey,
nor his guarantor, nor otherwise bound for him by
contract on these matters, if Anton F. Coldewey had
a right of action against William G. Coldewey, he
still had it.    If Anton F. Coldewey's estate had such
right, it could not be affected by the agreement be-
tween the bank and William G. Coldewey.

Again, if the bank derived any benefit or advantage
from the assignment and the collateral agreement,
that advantage went to reduce William G. Coldewey's
indebtedness to it, and to the extent that it did re-
duce that indebtedness Anton F. Coldewey's liability
to the bank was correspondingly reduced.    There-
fore, instead of being a detriment, it was an ad-
vantage to Anton F. Coldewey's estate that the agree-
ment was made.    There was no privity between
Anton F. Coldewey, William G. Coldewey, and the
bank in this matter.    William G. Coldewey was
bound to the bank upon his implied contract to repay
it the money had and received by him.    Anton F.
Coldewey was bound to the bank for his tort, wherein
he, in neglect of his duty, or in fraud, suffered his
son to withdraw the funds of the bank, without con-
sent of the board of directors or the advisory com-
mittee, and without collateral or other security,
whereby the bank sustained the loss.    This is not
such a relation as that a release of one of the parties
bound would release the other.    (Brannin v. Loving,
82 Ky., 377, 6 Ky. Law Rep., 328.)

It may be true, as claimed by appellees, and as

indicated by the opinion of the learned chancellor who tried this case, that the cashier was more culpable in the matter of allowing these overdrafts than was the president. It may furthermore be true, as claimed, that others of the board of directors were culpably negligent in the matter, though, if these facts were all so, the bank's right of action is for the tort against all of its derelict officers who have occasioned its loss. The action may be against all, or it may be against one or more. The bank's legal right to recover the loss indicated by this opinion against Anton F. Coldewey's estate appears to be clear in law. The unsecured notes executed by William G. Coldewey in part settlement of his overdrafts, after they had been created, are to be treated as the overdrafts are. These settlements were not a loaning of the bank's money by its board of directors, but simply reduced to definite form the evidence and amount of the liability to it previously created by the overdrafts wrongfully permitted by the president and cashier.

The judgment of the circuit court to the contrary is reversed and cause remanded, with directions to enter judgment in conformity with this opinion.

Petition for rehearing by appellee overruled.